UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS EDWARDS,<br><br>                    Plaintiff<br><br>    v.<br><br>WARDEN M. HOUSER, *et al.*,<br><br>                    Defendants. | CIVIL ACTION NO. 1:23-CV-01287<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Nicholas Edwards ("Edwards"), a state inmate in the custody of the Pennsylvania Department of Corrections, commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 8). Named as Defendants are Warden Houser, Lieutenant Redfern, and Unit Manager Potts. Before the Court is Defendants' Rule 12(b) motion (Doc. 12) to partially dismiss the complaint. For the reasons set forth below, the Court will deny the motion.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On May 3, 2022, Edwards filed his original complaint in the Commonwealth Court of Pennsylvania. (Doc. 1-1, at 2-4). On May 18, 2022, the Commonwealth Court transferred the matter to the Court of Common Pleas of Centre County because the Commonwealth Court was not the proper forum to commence a § 1983 action. (Doc. 1-1, at 4; Doc. 1-1, at 33). Defendants subsequently removed the action to this Court and filed a motion to partially dismiss the complaint. (Doc. 1; Doc. 4). In response, Edwards sought, and was granted, leave to file an amended complaint. (Doc. 5; Doc. 7). Edwards' amended complaint is the governing pleading in this action. (Doc. 8). The remaining claims in this matter are a First Amendment retaliation claim against Defendants Redfern and Houser, and an Eighth

Amendment failure to protect claim against Defendant Potts. (*See* Doc. 30). The relevant factual allegations are as follows.

On July 29, 2021, Edwards allegedly engaged in a physical altercation with fellow inmate Lewis. (Doc. 8, at 2, ¶ 10). Prior to this altercation, Edwards asserts that inmate Lewis continually harassed him by waking him up in the early morning hours and threatened to kill him. (Doc. 8, at 2, ¶ 13).

Edwards alleges that in July of 2021, he wrote a letter to the Department of Justice ("DOJ") and to former Governor Tom Wolf regarding "Defendant/Staff Misconduct." (Doc. 8, at 2, ¶ 7). He alleges that Defendant Redfern retaliated against him for sending this letter by ordering two unnamed correctional officers to confiscate his typewriter for one day, threatening to send him to "the hole" if he did not withdraw his letter, placing him in administrative segregation, and issuing a false report related to Edwards' July 2021 altercation with inmate Lewis. (Doc. 8, at 2, ¶¶ 8, 10-12; Doc. 8, at 3, ¶¶ 14, 15, 21).

In relation to his altercation with inmate Lewis, Edwards alleges that Defendant Potts failed to protect him from harm. Edwards asserts that he submitted an inmate request slip to Defendants Potts wherein he informed her of his issues with inmate Lewis, stated that inmate Lewis was threatening to kill him, and requested to be moved to a different cell away from inmate Lewis. (Doc. 8, at 2, ¶ 13; Doc. 8, at 3, ¶ 19). Edwards maintains that Defendant Potts had actual knowledge of his issues with inmate Lewis but failed to respond to his inmate request slip. (Doc. 8, at 3, ¶ 19).

Next, Edwards asserts that Defendant Houser, in his capacity as Warden, is responsible for implementing policies, managing prison staff, and handling grievance appeals. (Doc. 8, at 4, ¶ 22; Doc. 8, at 6, ¶ 41). He alleges that in July of 2022, Defendant Houser

transferred him to another facility—SCI-Huntingdon—in retaliation for initiating this civil rights lawsuit in Centre County. (Doc. 8, at 5, ¶¶ 35-36, 40). As a result of this transfer, Edwards asserts that he lost his prison job and property and spent approximately sixty days in the Restricted Housing Unit ("RHU"). (Doc. 8, at 5, ¶ 36). Edwards further alleges that, while in the yard in May of 2022, he confronted Defendant Houser about a complaint that Edwards had filed. (Doc. 8, at 5, ¶ 37; Doc. 31-1, at 2). Defendant Houser allegedly responded by stating "you['re] the one who is suing me." (Doc. 8, at 5, ¶ 37). Edwards asserts that Defendant Houser then walked away and ordered staff members to "lock [him] up" because he complained about staff misconduct related to a conflict between two fellow inmates. (Doc. 8, at 5, ¶ 37).

Presently, Defendants move to dismiss the First Amendment retaliation claim against Defendant Houser and the Eighth Amendment failure to protect claim against Defendant Potts.[1] (Doc. 12). The motion is fully briefed and ripe for resolution.

## II. STANDARDS OF REVIEW

### A. MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal

---

[1] Defendants concede that Edwards has plausibly stated a First Amendment retaliation claim against Defendant Redfern. (Doc. 17, at 11 n.3; Doc. 24, at 1-2).

claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed

in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must

permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

    B.    42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**III.    DISCUSSION**

    A.    FIRST AMENDMENT RETALIATION CLAIM AGAINST HOUSER

Defendants seek to dismiss the retaliation claim against Defendant Houser. The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where

legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim, Edwards bears the burden of demonstrating three elements. First, he must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, he must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). Significantly, the effect of the adverse action must be more than *de minimis*. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Third, he is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him. *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Edwards alleges that Defendant Houser retaliated against him by placing him in the RHU and transferring him to another facility because he wrote a letter to the DOJ and to former Governor Tom Wolf about "Defendant/Staff Misconduct" and because he initiated this civil rights lawsuit in Centre County. (Doc. 8, at 2, ¶ 7; Doc. 8, at 5, ¶¶ 35-36, 40; Doc. 29, at 3-4).

With respect to the first element of the *Rauser* test, the filing of a lawsuit is protected conduct that falls within the ambit of the First Amendment. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *see also Allah*, 229 F.3d at 224 (noting that it is well settled that "prisoners have a constitutional right to access to the courts"). Similarly, "[t]he First Amendment's Petition Clause protects individuals from retaliation for filing non-sham lawsuits, grievances, and other petitions directed at the government or its officials." *Carey v. City of Wilkes-Barre*, No. 3:05-CV-2093, 2008 WL 11492767, at *5 (M.D. Pa. Feb. 1, 2008), *report and recommendation adopted*, No. 05-CV-2093, 2008 WL 11492789 (M.D. Pa. Feb. 21, 2008) (citing *San Filippo v. Bongiovanni*, 30 F.3d 424, 439 (3d Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995)). Edwards has thus satisfied the first *Rauser* prong.

As to the second element of a retaliation claim, Edwards argues that his placement in the RHU and transfer to SCI-Huntingdon are adverse actions. As the Third Circuit has recognized, under some circumstances, a prison transfer may constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Vaughn v. Cambria Cnty. Prison*, 709 F. App'x 152, 154 (3d Cir. 2017) (per curiam); *Burton v. Rozum*, 422 F. App'x 140, 142 (3d Cir. 2011) (per curiam). Moreover, placement in the RHU may also constitute an adverse action. *See Mitchell*, 318 F.3d at 530 (holding that "several months in disciplinary confinement would deter a reasonably firm prisoner from exercising

his First Amendment rights"); *see also* Allah, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation as punishment for filing civil rights complaints stated a retaliation claim). Here, the transfer allegedly resulted in the loss of a prison job, loss of property, and placement in the RHU. Edwards' allegations satisfy the adverse action prong.

The Court must next determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. The Third Circuit has indicated that a plaintiff's burden regarding element three is very low at the pleading stage. *See* Mitchell, 318 F.3d at 530 (stating that "the word 'retaliation' in [the plaintiff's] complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him"); *see also* Mack v. Yost, 427 F. App'x 70, 73 (3d Cir. 2011) (per curiam) (noting that the plaintiff's "burden at the pleading stage is merely to state a prima facie case by alleging that his protected conduct was a 'substantial or motivating factor' for [the adverse action]") (citation omitted); Bendy v. Ocean Cnty. Jail, 341 F. App'x 799, 802 (3d Cir. 2009) ("To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred.") (internal quotation marks omitted). Edwards has plausibly alleged a causal link between his protected conduct and the Defendant's adverse action to support an inference of retaliatory motive: Defendant Houser allegedly transferred Edwards to another facility in July of 2022 after Edwards initiated this civil rights action in June of 2022. (Doc. 29, at 4, ¶ 4). However, the passage of one year from the time when Edwards sent a letter to the DOJ and former Governor Wolf in July of 2021 until he was transferred to SCI-Huntingdon in July of 2022 is not unusually suggestive to infer causation. Edwards has nevertheless met prong three.

As stated, if the prisoner establishes a prima facie case of retaliation, as is the case here, the burden then shifts to prison officials to show by a preponderance of the evidence that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Defendants have not advanced any argument that Defendant Houser's alleged acts were reasonably related to a legitimate penological interest.

Accordingly, Defendants' motion to dismiss the retaliation claim against Defendant Houser will be denied and this claim shall be permitted to proceed.

B. Eighth Amendment Failure to Protect Claim against Potts

Defendants next move to dismiss the failure to protect claim lodged against Defendant Potts. The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). While a prison official has a duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. *Farmer*, 511 U.S. at 833-34. An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol*, 256 F.3d at 133; *see Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). Actual

knowledge can be proven circumstantially where the general danger was obvious. *Farmer,* 511 U.S. at 842. For example, if the prisoner-plaintiff

> presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Farmer,* 511 U.S. at 842-43 (quotation marks and citation omitted). However, "a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." *Beers-Capitol,* 256 F.3d at 133.

Here, Edwards alleges that Defendant Potts failed to protect him from inmate Lewis, who allegedly attacked him. Edwards asserts that, prior to this incident, he warned Defendant Potts about issues with inmate Lewis. Specifically, he alleges that he submitted an inmate request slip to Defendant Potts, but she failed to respond. (Doc. 8, at 2, ¶ 13; Doc. 8, at 3, ¶ 19). In the exhibits attached to the original complaint, Edwards includes an inmate request slip addressed to Defendant Potts dated July 19, 2021. (Doc. 1-1, at 14). In that request slip, Edwards informed Defendant Potts that inmate Lewis was housed in the cell next to him, wakes him up by "banging on the table at 5:00 am", and was threatening to kill him, and that he was concerned about his safety if he was not moved to a different cell. (Doc. 1-1, at 14). Edwards alleges that Defendants Potts was thus actually aware of his concerns with inmate Lewis but failed to respond to his inmate request slip. (Doc. 8, at 3, ¶ 19). He further alleges that the altercation with inmate Lewis occurred shortly thereafter on July 29, 2021. (Doc. 8, at 2, ¶ 10). The Court finds that Edwards has alleged sufficient facts to state a plausible failure

to protect claim against Defendant Potts. The factual allegations show that she was made aware of the threat of harm to Edwards through his inmate request slip. As such, it was reasonably foreseeable that Edwards would be vulnerable to attack by inmate Lewis. Accepting the allegations as true and drawing all reasonable inferences in favor of Edwards, the Court finds that he has stated a plausible claim that Defendant Potts violated her constitutional duty to protect him from inmate violence. Accordingly, the Court will deny the motion to dismiss the Eighth Amendment failure to protect claim against Defendant Potts.

IV. **CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' motion (Doc. 12) to partially dismiss the complaint. A separate Order shall issue.


**Dated: July 9, 2024**                                  *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Judge**