**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NICHOLAS EDWARDS,<br><br>Plaintiff<br><br>v.<br><br>WARDEN N. HOUSER, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 1:23-cv-1287<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

On May 3, 2022, Plaintiff Nicholas Edwards ("Edwards"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), filed his original complaint pursuant to 42 U.S.C. § 1983 in the Commonwealth Court of Pennsylvania. (Doc. 1-1, at 2-4). On May 18, 2022, the Commonwealth Court transferred the matter to the Court of Common Pleas of Centre County because the Commonwealth Court was not the proper forum to commence a Section 1983 action. (Doc. 1-1, at 4; Doc. 1-1, at 33). Defendants subsequently removed the action to this Court. (Doc. 1).

Edwards sought, and was granted, leave to file an amended complaint, and Defendants moved to dismiss the amended complaint in part. (Doc. 5; Doc. 7; Doc. 12). Upon review, the Court denied Defendants' motion to partially dismiss the amended complaint. (Doc. 32; Doc. 33). The remaining claims in this matter are a First Amendment retaliation claim against Lieutenant Redfern and Superintendent Houser, and an Eighth Amendment failure to protect claim against Unit Manager Potts. (Doc. 8; Doc. 30).

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 52). For the reasons set forth below, the Court will

grant Defendants' motion and enter judgment in their favor.

## I. STATEMENT OF FACTS[1]

Facts Related to Defendant Potts

Edwards alleges that he sent a Request to Staff form to Defendant Potts on July 19, 2021, claiming that inmate Lewis threatened to kill him. (Doc. 68 ¶ 1; Doc. 79 ¶ 1). Defendants maintain that Edwards lacks competent admissible evidence that Potts ever received Edwards' July 19th Request to Staff form. (Doc. 68 ¶ 2). Edwards contends that Defendant Potts received his July 19th Request to Staff form because the block officer placed the form in Potts' box, and Potts is the only person who can retrieve items from the box. (Doc. 79 ¶ 2).

Defendant Potts was not working on July 29, 2021. (Doc. 68 ¶ 3; Doc. 79 ¶ 3).

The July 29, 2021 Incident

Closed circuit security cameras captured an interaction between Edwards and another inmate on July 29, 2021. (Doc. 68 ¶ 4; Doc. 79 ¶ 4). At approximately 9:47 a.m. on July 29, 2021, Edwads was outside of his cell. (Doc. 68 ¶ 5; Doc. 79 ¶ 5). Edwards descended a flight of stairs and walked to a sink station to make himself breakfast. (Doc. 68 ¶ 6; Doc. 79 ¶ 6). After making his breakfast, Edwards walked away from the sink station and walked back up the stairs towards his cell. (Doc. 68 ¶ 7; Doc. 79 ¶ 7). Edwards reached the top of the stairs

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. M.D. PA. LOCAL RULE OF COURT 56.1. Unless otherwise noted, the factual background herein derives from the parties' statements of material facts. (Doc. 68; Doc. 79).

and took several steps towards his cell. (Doc. 68 ¶ 8; Doc. 79 ¶ 8). Then, inmate Lewis came out of a cell and moved towards Edwards, causing him to drop his breakfast and take several steps backwards. (Doc. 68 ¶ 9; Doc. 79 ¶ 9). Edwards contends that inmate Lewis assaulted him at this point. (Doc. 79 ¶ 9). Edwards then took several steps towards his dropped breakfast and picked it up again. (Doc. 68 ¶ 10; Doc. 79 ¶ 10). After Edwards dropped his breakfast, inmate Lewis walked away from Edwards' immediate vicinity and walked back to his own cell. (Doc. 68 ¶ 11; Doc. 79 ¶ 11). Edwards picked up his breakfast and proceeded into his cell. (Doc. 68 ¶ 12; Doc. 79 ¶ 12).

At no point before, during, or immediately after the incident, did anyone within the security camera's view rush away for safety. (Doc. 68 ¶ 13; Doc. 79 ¶ 13). Edwards contends that there is a video of a different angle showing that officers arrived on the scene "for [their] safety." (Doc. 79 ¶ 13).

Defendants maintain that Edwards: (1) lacks competent admissible evidence that there was a substantial risk of harm to his person from inmate Lewis on July 29, 2021; and (2) lacks competent admissible evidence that he suffered a greater than de minimis physical injury from the interaction with inmate Lewis on July 29, 2021. (Doc. 68 ¶¶ 14-15). In response, Edwards contends that he suffered psychological distress and injury from the assault itself. (Doc. 79 ¶¶ 14-15).

Edwards' Transfer to a New Facility

On May 27, 2022, Edwards was approved for a separation transfer. (Doc. 68 ¶ 16; Doc. 79 ¶ 16). Defendants maintain that Edwards had to be transferred from the State Correctional Institution at Benner Township ("SCI-Benner Township") to a new facility because, on March 13, 2022, he was observed yelling at staff members regarding his

disapproval of Defendant Potts. (Doc. 68 ¶ 17). Edwards counters that he was not yelling at staff but was talking to the Warden and Deputy Warden about Defendant Potts abusing her power. (Doc. 79 ¶ 17).

Defendants assert that, through investigation, it was discovered that Edwards threatened to harm Defendant Potts. (Doc. 68 ¶ 18). Edwards maintains that through this "fake" investigation, he never threatened to harm Defendant Potts. (Doc. 79 ¶ 18). Defendants further assert that Edwards was reported to have stated that, if he did not receive a promotional transfer soon, he would do something to Defendant Potts so that he had to be transferred. (Doc. 68 ¶ 19). Edwards counters that he never made this statement but was only voicing his concerns. (Doc. 79 ¶ 19). Defendants maintain that Edwards admitted that some of the comments he made could have been perceived as implied threats, and that Edwards stated that he wished to transfer to another institution because it would be best for everyone involved. (Doc. 68 ¶¶ 20-21). Edwards asserts that he never made these statements. (Doc. 79 ¶¶ 20-21).

Edwards was transferred to the State Correctional Institution at Huntingdon ("SCI-Huntingdon") on July 26, 2022. (Doc. 68 ¶ 22; Doc. 79 ¶ 22).

Edwards' Previously Dismissed Litigation

On January 6, 2022, Edward filed a civil complaint pursuant to 42 U.S.C. § 1983 in the Centre County Court of Common Pleas, docketed at 2022-0034. (Doc. 68 ¶ 23; Doc. 79 ¶ 23). In his state court complaint, Edwards sued Lieutenant Redfern and Unit Manager Potts. (Doc. 68 ¶ 24; Doc. 79 ¶ 24). In his state court complaint, Edwards claimed that he was assaulted by inmate Lewis after Lewis threatened to kill him. (Doc. 68 ¶ 25; Doc. 79 ¶ 25). In his state court complaint, Edwards claimed that Redfern retaliated against him by filing a

"false report of charges" against him on July 29, 2021 and July 30, 2021, and confiscated his typewriter. (Doc. 68 ¶ 26; Doc. 79 ¶ 26). In his state court complaint, Edwards claimed that Redfern retaliated against him because of his "complaint about staff misconduct[] to the Department of Justice[] and to the Governor[]." (Doc. 68 ¶ 27; Doc. 79 ¶ 27). In his state court complaint, Edwards claimed that Unit Manager Potts failed to protect him. (Doc. 68 ¶ 28; Doc. 79 ¶ 28). Edwards asserts that he only set forth negligence claims in his state court case. (Doc. 79 ¶ 29).

On March 1, 2022, the Centre County Court of Common Pleas dismissed Edwards' state court complaint as "frivolous." (Doc. 68 ¶ 29; Doc. 79 ¶ 29).

Facts Related to Exhaustion of Administrative Remedies

Between July 29, 2021 and November 1, 2022, Edwards filed 19 grievances. (Doc. 68 ¶ 30; Doc. 79 ¶ 30). Of those 19 grievances, the parties agree that only three are relevant to the claims at issue in this case—numbers 939558, 982230, and 992660. (Doc. 68 ¶¶ 31-78; Doc. 79 ¶¶ 31-36, 53-78).

On August 9, 2021, Edwards filed grievance number 939558, wherein he claimed that Lieutenant Redfern issued two false inmate misconducts against him on July 29, 2021 and July 30, 2021. (Doc. 68 ¶¶ 31-32; Doc. 79 ¶¶ 31-32; Doc. 68-9). In grievance number 939558, Edwards did not set forth any claim regarding the confiscation of a typewriter, he did not set forth any claim pertaining to any verbal threat from Lieutenant Redfern, and he did not name or identify Superintendent Houser or Unit Manager Potts. (Doc. 68 ¶¶ 33-35; Doc. 79 ¶¶ 33-35). Edwards contends that he did not set forth a claim regarding a typewriter or a claim pertaining to any verbal threat from Lieutenant Redfern because he was "intimidated." (Doc. 79 ¶¶ 33-34). He also contends that he did not name or identify Superintendent Houser or

Unit Manager Potts because "some of the events did not happen [until] after the facts." (Doc. 79 ¶ 35).

On May 27, 2022, Edwards filed grievance number 982230, wherein he claimed that he should not be on administrative custody status and that he never threatened to harm anyone. (Doc. 68 ¶¶ 52-53; Doc. 79 ¶ 53).

On or about July 26, 2022, Edwards was transferred from SCI-Benner Township to SCI-Huntingdon. (Doc. 68 ¶ 54; Doc. 79 ¶ 54).

On August 9, 2022, Edwards filed grievance number 992660, wherein he alleged that he was transferred from SCI-Benner Township to SCI-Huntingdon and his block worker laundry job was taken without due process. (Doc. 68 ¶¶ 55-56; Doc. 79 ¶¶ 55-56). Grievance number 992660 does not name or identify Superintendent Houser, Lieutenant Redfern, or Unit Manager Potts. (Doc. 68 ¶¶ 57-59; Doc. 79 ¶¶ 57-59). Grievance number 992660 does not set forth any facts related to any retaliation claim with respect to his transfer to SCI-Huntingdon. (Doc. 68 ¶ 60; Doc. 79 ¶ 60). Edwards maintains that he did not name or identify Houser, Redfern, or Potts in grievance number 992660 because he was intimidated and verbally threatened by Lieutenant Redfern. (Doc. 79 ¶¶ 57-60).

DC-ADM 804 is the Department of Corrections' policy pertaining to inmate grievances and appeals. (Doc. 68 ¶ 79). DC-ADM 804 sets forth a three-tiered grievance system which serves as an inmate's administrative remedy: (1) an initial review by a Grievance Officer; (2) appeal to the Facility Manager or designee; and (3) appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") for final review. (Doc. 68 ¶ 80; Doc. 79 ¶ 80). Pursuant to DC-ADM 804, any inmate personally affected by a DOC or institutional action or policy, or by the action of a DOC employee, may file a grievance within

15 working days of the occurrence of the grieved event. (Doc. 68 ¶ 81; Doc. 79 ¶ 81).

When filing a grievance, the inmate must include a statement of the relevant facts to their claim containing the: (1) date, approximate time, and location of the alleged events; (2) the identity of the directly involved individuals; (3) the specific claims they wish to make regarding the alleged events; and (4) any compensation they seek. (Doc. 68 ¶ 82; Doc. 79 ¶ 82).

Whether Edwards has Competent Admissible Evidence

Defendants maintain that Edwards: (1) lacks competent admissible evidence of his alleged complaint to the Department of Justice ("DOJ") about purported staff misconduct; (2) lacks competent admissible evidence of his allegedly lost and undescribed property claim against Houser; (3) lacks competent admissible evidence that Houser was the subject of his alleged protected conduct; (4) lacks competent admissible evidence that Redfern was the subject of his alleged protected conduct; and (5) lacks competent admissible evidence that Houser was the individual who placed him in the Restricted Housing Unit for 60 days. (Doc. 68 ¶¶ 83-87). In response, Edwards contends that he has such competent admissible evidence. (Doc. 79 ¶¶ 83-87).

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary

judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." M.D. PA. LOCAL RULE OF COURT 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) Edwards' claims against Redfern and Potts are barred by *res judicata*; (2) Edwards failed to exhaust his administrative remedies; (3) Edwards cannot establish a failure to protect claim against Potts; and (4) Edwards cannot establish a retaliation claim against Houser and Redfern. (Doc. 69).

The Court begins and ends its analysis by addressing the threshold questions of whether Edwards is barred from relitigating his claims against Defendants Redfern and Potts based on the doctrine of *res judicata*, and whether Edwards properly exhausted his claims.

A. RES JUDICATA/ CLAIM PRECLUSION

Claim preclusion requires "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021) (citation omitted). Thus, *res judicata* "bars a claim litigated between the same parties or their privies in earlier litigation where the claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). "Moreover, 'res judicata bars not only claims that were brought in the previous action, but also *claims that could have been brought*.'" *Blunt*, 767 F.3d at 277 (citations omitted).

The record confirms that the claim preclusion elements are satisfied with respect to the present claims against Defendants Redfern and Potts.

It is undisputed that Edwards previously filed a Section 1983 action against Defendants Redfern and Potts in the Centre County Court of Common Pleas on January 6, 2022. (Doc. 68 ¶¶ 23-24; Doc. 79 ¶¶ 23-24; Doc. 68-7). It is also undisputed that, in his state court complaint, Edwards alleged that he was assaulted by inmate Lewis after he threatened to kill him, that Defendant Redfern retaliated against by filing a "false report of charges" against him and confiscating his typewriter, that Defendant Redfern retaliated against him because of his "complaint about staff misconduct[] to the Department of Justice[] and to the Governor[][,]" and that Defendant Potts failed to protect him. (Doc. 68 ¶¶ 25-28; Doc. 79 ¶¶ 25-28). In addition, it is undisputed that the Centre County Court of Common Pleas dismissed

the action as frivolous on March 1, 2022. (Doc. 68 ¶ 29; Doc. 79 ¶ 29; Doc. 68-7, at 10-11).

The record reflects that Edwards' prior claims against Defendants Redfern and Potts were dismissed as frivolous pursuant to Pennsylvania Rule of Civil Procedure 240(j)(1), which constitutes a final judgment on the merits. (Doc. 68-7, at 10-11). It is well-settled that a "[d]ismissal for failure to state a claim is a final judgment on the merits for *res judicata* purposes." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007). *See also Porter v. Cancelmi*, 318 F. App'x 48, 50 n.2 (3d Cir. 2008) (not precedential) (dismissal of an *in forma pauperis* complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) constitutes a final judgment on the merits); *Garland v. Knorr*, Civ. A. No. 19-2996, 2020 WL 3034811, at *12 (E.D. Pa. June 5, 2020) (dismissal of plaintiff's state court action under Rule 240(j) was a final judgment on the merits for purposes of *res judicata*). Thus, the first factor is satisfied.

With respect to the second factor, Edwards' earlier lawsuit also targeted the same SCI-Benner Township officials—Defendants Redfern and Potts. The second factor is clearly satisfied with respect to Defendants Redfern and Potts.[2]

[2]The second factor is also arguably met with respect to Defendant Houser. The Third Circuit has explained privity to be "merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the *res judicata*." *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)); *see also Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (noting that the doctrine prohibits successive suits against the same defendants and those in privity with them based on the same underlying events). Edwards did not name Houser in his prior state court action. Defendant Redfern is a Lieutenant and Defendant Potts is a Unit Manager, and Defendant-Superintendent Houser presumably oversees the officers at SCI-Benner Township. Such supervisor-subordinate relationship is sufficient to establish privity between Defendants Redfern and Potts, and Defendant Houser. Thus, Defendant Houser had a sufficiently close relationship to the previously named Defendants to justify preclusion. *Bruszewski v. United States,* 181 F.2d 419, 423 (3d Cir.), *cert. denied*, 340 U.S. 865 (1950) (noting that the test for privity is whether there is a sufficiently close relationship between the party to the prior litigation and the nonparty against whom the prior judgment is being used); *see also West v. Coupe*, No. 14-1252-SLR, 2014 WL 6784319, at *3 (D. Del. Nov. 30, 2014) (dismissing *pro se* prisoner's § 1983 complaint as barred by *res judicata* and noting

As to the third factor, courts "take a 'broad view' of what constitutes the same cause of action." *Blunt*, 767 F.3d at 277 (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010)). Moreover, a *res judicata* analysis "does not depend on the specific theory invoked, but rather [on] 'the essential similarity of the underlying events giving rise to the various legal claims.'" *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)). *See also Cruickshank-Wallace v. CNA Fin. Corp.*, 769 F. App'x 77, 80 (3d Cir. 2019) (not precedential) (observing that "a mere change in the legal theory under which [a party] now pursue[s] [his] claims will not prevent the application of the doctrine of *res judicata*"). Edwards' claims against Defendants Redfern and Potts are based on the same, previously adjudicated cause of action. The third factor is satisfied here.

Accordingly, Edwards' duplicative federal lawsuit against Defendants Redfern and Potts meets the elements for claim preclusion and is barred by *res judicata.* Defendants Redfern and Potts are entitled to judgment in their favor on this ground.[3]

---

that "the addition of new defendants to those plaintiff named before does not change this conclusion because they are all prison officials or medical personnel in privity with one another").

[3]While the Court concludes that the claims against Defendants Redfern and Potts are barred by *res judicata*, in addressing whether Edwards properly exhausted his administrative remedies, the Court includes the grievances (or lack thereof) filed against Defendants Redfern and Potts.

B. ADMINISTRATIVE EXHAUSTION[4]

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court…to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204

[4]Because Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 83).

F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "An administrative remedy is unavailable when it "operates as a simple dead end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

The Department of Corrections employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); *Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys.*, Policy No. DC-ADM 804 ("DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. DC-ADM 804 § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate

Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. DC-ADM 804 § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." DC-ADM 804 § 1(A)(11).

The record reflects that Edwards filed three relevant grievances—numbers 939558, 982230, and 992660. They are as follows.

On August 9, 2021, Edwards filed grievance number 939558, wherein he claimed that Lieutenant Redfern issued false inmate misconducts against him on July 29, 2021 and July 30, 2021, in retaliation for Edwards' complaint to the DOJ. (Doc. 68 ¶¶ 31-32; Doc. 79 ¶¶ 31-32; Doc. 68-9, at 13; Doc. 85-1, at 1). On initial review, the Facility Grievance Coordinator rejected the grievance because the matter must be pursued through DC-ADM 801, Inmate Discipline/ Misconduct Procedures. (Doc. 68-9, at 12; Doc. 85-1, at 2). Edwards appealed to the Facility Manager, Defendant Houser, who upheld the initial review response. (Doc. 68-9, at 9-11; Doc. 85-1, at 3). Edwards then filed an appeal to SOIGA. (Doc. 85-1, at 6). On appeal, the Chief Grievance Officer upheld the decisions of the Grievance Coordinator and the Facility Manager and found that grievances related to

Inmate Discipline/ Misconduct Procedures must be pursued through DC-ADM 801.[5] (Doc. 68-9, at 2; Doc. 85-1, at 7).

On May 27, 2022, Edwards filed grievance number 982230, wherein he claimed that he should not be on administrative custody status and that he never threatened to harm anyone. (Doc. 68-11, at 3). On initial review, the Facility Grievance Coordinator rejected the grievance because the matter must be pursued through DC-ADM 802, Administrative Custody Procedures. (Doc. 68-11, at 2). Edwards appealed to the Facility Manager, Defendant Houser, who upheld the initial review response. (Doc. 68-11, at 4-6). Edwards did not file an appeal to SOIGA. (*See* Doc. 68-11).

On August 9, 2022, Edwards filed grievance number 992660, wherein he alleged that he was transferred from SCI-Benner Township to SCI- Huntingdon and his block worker laundry job was taken without due process. (Doc. 68-12, at 4). On initial review, the Facility Grievance Coordinator denied the grievance and found as follows:

> DC-ADM 816 Section 1, subsection U states: when an inmate is permanently transferred to another facility, he shall be processed for a work/school assignment at the receiving facility and compensated in accordance with that assignment. Furthermore, that same policy states there is no guarantee that an inmate will keep his pay rate when he is administratively transferred to another Department facility.
>
> For the reasons stated above, this grievance and requested relief are denied. Edwards is currently assigned GLP status and is getting paid accordingly. He can submit a request to the Inmate Employment Office to be placed on waiting lists so that he can be processed for institutional employment.

(Doc. 68-12, at 2). Edwards did not appeal to the Facility Manager or SOIGA. (*See* Doc. 68-12).

---

[5]The record establishes that Edwards exhausted his retaliatory misconduct claim against Defendant Redfern. However, as set forth above, this claim is nevertheless barred by *res judicata*.

Several conclusions can be drawn from this grievance history.

First, there is no evidence of record that Edwards appealed grievance number 982230 to SOIGA or that he appealed grievance number 992660 to the Facility Manager or SOIGA. With respect to grievance number 982230, after the Facility Manager denied relief, the next step Edwards should have taken was to file a final appeal to SOIGA. Edwards failed to do so. With respect to grievance number 992660, after the grievance was denied on initial review, the next step Edwards should have taken was to file an appeal to the Facility Manager, and then, if unsatisfied with the Facility Manger's response, file a final appeal to SOIGA. Edwards failed to appeal the initial response of grievance number 992660 at all. And so, Edwards abandoned grievance numbers 982230 and 992660 by failing to fully exhaust the administrative remedy process. Moreover, Edwards admits that grievance number 982230 is not relevant to the matters before the Court. (Doc. 82, at 17).

Second, Edwards never named or identified Superintendent Houser, Lieutenant Redfern, or Unit Manager Potts in grievance number 992660 as committing an act or omission that potentially violated his constitutional rights. (Doc. 68-12, at 4). In addition, Edwards did not set forth any facts in grievance number 992660 related to any retaliation claim with respect to his transfer to SCI-Huntingdon or any other retaliation claims. (Doc. 68-12, at 4). The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance must "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; it must "identify individuals directly involved in the event(s)" and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804

§ 1(A)(11). Edwards failed to comply with these listed requirements as to grievance number 992660. "[I]in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (not precedential). The purpose of this requirement is "to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372 F.3d at 234.

Third, grievance number 939558 does not set forth any claim regarding confiscation of a typewriter, does not set forth any claim pertaining to any verbal threat from Lieutenant Redfern, and does not name or identify Superintendent Houser or Unit Manager Potts. (Doc. 68-9, at 13; Doc. 85-1, at 1). Once again, regarding grievance number 939558, Edwards failed to comply with the requirements of DC-ADM 804 § 1(A)(11). Additionally, Defendant Houser's only involvement in the grievance process was in his role as Superintendent/ Facility Manager for the second-level grievance review. Edwards is not excused from administratively exhausting claims against Defendant Houser—as required by the PLRA—simply because, in his role in the grievance process, he denied relief under DC-ADM 804. *See, e.g.*, *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (not precedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

This grievance history confirms that Edwards failed to properly exhaust grievance numbers 982230 and 992660, and, with respect to grievance number 939558, Edwards failed to set forth any claim regarding confiscation of a typewriter, a verbal threat from Lieutenant Redfern, or any claims against Superintendent Houser or Unit Manager Potts.

As Defendants have provided evidence to support their failure to exhaust defense, the burden shifts to Edwards to produce evidence that the DOC administrative remedy process was not available to him. Edwards attempts to excuse his procedural default.

Edwards maintains that he did not name or identify Houser, Redfern, or Potts in grievance number 992660 because he was intimidated and verbally threatened by Lieutenant Redfern. (Doc. 79 ¶¶ 57-60).

Regarding grievance number 939558, Edwards contends that he did not set forth a claim regarding confiscation of a typewriter or a claim pertaining to any verbal threat from Lieutenant Redfern because he was "intimidated." (Doc. 79 ¶¶ 33-34; Doc. 82, at 13, 17). He also contends that he did not name or identify Superintendent Houser or Unit Manager Potts because "some of the events did not happen [until] after the facts." (Doc. 79 ¶ 35).

While barriers such as threats and intimidation by prison officials could conceivably fit the narrow exception to the exhaustion requirement, "[t]o defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Rinaldi*, 904 F.3d at 269. Edwards argues that he is excused from the exhaustion requirement of the PLRA because Defendant Redfern and "prison staff" threatened him. (Doc. 82, at 13, 17). Notwithstanding the fact that Edwards offers no evidence of these threats other than his own self-serving affidavit (Doc. 85-2), Edwards has, despite these alleged threats, continued to file grievances and litigate multiple lawsuits against prison officials.[6] Therefore, Edwards has not shown that

[6] *See, e.g.*, Doc. 68-8, Grievance History; *Williamson, et al. v. Wetzel, et al.*, No. 1:23-cv-1781 (M.D. Pa.); *Edwards v. Rivello, et al.*, No. 1:23-cv-156 (M.D. Pa.); *Edwards v. Superintendent, et al.*, No. 2:26-cv-5275 (E.D. Pa.).

alleged threats from Defendant Redfern or other unidentified prison officials, even if sufficiently serious, did actually deter him from continuing to pursue grievances, so he is not exempt from the exhaustion requirement of the PLRA.

Therefore, summary judgment is warranted in favor of Defendants based on failure to exhaust: (1) the claims in grievance number 982230; (2) the retaliatory transfer claim against Houser, and any other retaliation claims against Houser, in grievance number 992660; and (3) the retaliation claim against Redfern related to the confiscation of the typewriter, any verbal threats from Redfern, and any claims against Houser and Potts in grievance number 939558. Although the retaliatory misconduct claim against Defendant Redfern was exhausted, this claim is indisputably barred by *res judicata*.

## IV. CONCLUSION

Consistent with the foregoing, the Court will grant Defendants' Rule 56 motion and enter judgment in their favor. (Doc. 52). An appropriate Order follows.

**Dated: July 31, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**